UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-62463-CV-ALTMAN

JOHNSON CUFFY,

       *Petitioner,*

vs.

MARK S. INCH,

       *Respondent.*

_____/

## ORDER

      The Petitioner, Johnson Cuffy, has brought a *pro se* Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, challenging his 2012 conviction and sentence. *See* Petition [ECF No. 1]. The Court referred the Petition to United States Magistrate Judge Lisette M. Reid, who issued a Report and Recommendation. *See* Report [ECF No. 61].[1] In her Report, the Magistrate Judge recommended that the Petition be dismissed as time-barred. *Id.* at 24. The Petitioner timely objected to *certain portions* of the Report. *See* Objections [ECF No. 62]. For the reasons set out below, the Court **ADOPTS** the Report **in part** and **DENIES** the Petition.

### BACKGROUND

      In October of 2012, a Florida jury convicted the Petitioner of eight separate felonies, which included one count of racketeering, one count of conspiracy to commit racketeering, and six counts of grand theft. *See* Judgment [ECF No. 19-1] at 60–71. For these crimes, the state court sentenced the

---

[1] This is the third such report. The first was vacated when the Court granted the Petitioner's "Motion for Rehearing/Clarification." *See* First Report [ECF No. 5]; Order Adopting First Report [ECF No. 8]; Order Granting Motion for Rehearing/Clarification [ECF No. 14]. The Magistrate Judge vacated the Second Report. *See* Second Report [ECF No. 42]; Paperless Order Vacating Second Report [ECF No. 46]. For purposes of this Order, though—unless otherwise noted—we refer to the Third Report.

Petitioner to 30 years in prison.[2] *See* Sentencing Order [ECF No. 19-1] at 76–94. The Petitioner timely appealed to the Fourth District Court of Appeal ("Fourth DCA"), *see* Fourth DCA Docket Sheet [ECF No. 19-1] at 101, which affirmed the conviction and sentence on February 18, 2016, *see Cuffy v. State*, 186 So. 3d 1037 (Fla. 4th DCA 2016).[3] The Fourth DCA's mandate issued on March 18, 2016. *See* Direct Appeal Mandate [ECF No. 19-1] at 291. The Petitioner did not pursue his claim in either the Florida Supreme Court or the Supreme Court of the United States. *See* Report at 4–5.

On March 24, 2016, approximately one month after the Fourth DCA's decision, the Petitioner filed his *first* Rule 3.850 Motion—which he promptly amended and then supplemented. *See* 2016 Rule 3.850 Motion ("*First* Rule 3.850 Motion") [ECF No. 19-1] at 295, 308, 369. The state trial court incorporated the State's response, denied the motion as procedurally barred, and found that "all of the claims are merely rewordings of arguments that Defendant raised or should have raised on direct appeal." Order Denying *First* Rule 3.850 Motion [ECF No. 19-1] at 477. The Petitioner appealed, *see id.* at 480, and the Fourth DCA summarily affirmed, *see Cuffy v. State*, 230 So. 3d 858 (Fla. 4th DCA 2017). The Fourth DCA's mandate on this *first* 3.850 appeal issued on May 12, 2017. *See* 2017 Fourth DCA Mandate [ECF No. 19-1] at 510.

Twenty-five days later, on June 6, 2017, the Petitioner filed his *second* Rule 3.850 Motion.[4] *See* 2017 Rule 3.850 Motion ("*Second* Rule 3.850 Motion") [ECF No. 19-1] at 535. On June 16, 2017, the

---

[2] The sentence technically included three 30-year and five 15-year sentences—all to run concurrently.
[3] This four-year delay was (somehow) everyone's fault. *First*, the court reporter sought—and received—two extensions to file the trial transcripts. *See* Fourth DCA Docket Sheet [ECF No. 19-1] at 101. *Then*, the Petitioner received two 90-day extensions to file his initial brief. *Id.* But, when those 180 days elapsed, the Petitioner still failed to produce a brief, so the Fourth DCA issued an order to show cause, which finally impelled him to submit his opening brief—now *one year* after the transcripts were filed. *Id. Next*, the State sought—and received—two extensions of time to respond. *Id.* But, soon after responding, the State withdrew its response and submitted an amended brief. *Id. Finally*, the Fourth DCA gave the Petitioner two extensions of time to reply. *Id.*
[4] To be clear: this is the day on which the Petitioner signed the motion—not the date on which the motion was received and docketed. "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557

state court dismissed the motion as successive and, alternatively, denied it on the merits. *See* Order Denying *Second* Rule 3.850 Motion [ECF No. 19-1] at 546–57 ("Even if it were not procedurally barred [as successive], it is DENIED."). The Petitioner appealed on June 26, 2017, *see* Notice of Appeal for *Second* Rule 3.850 Motion [ECF No. 19-1] at 561, and the Fourth DCA summarily affirmed, *see Cuffy v. State*, 231 So. 3d 446 (Fla. 4th DCA 2017). The mandate in this *second* 3.850 appeal issued on October 6, 2017. *See* Second 2017 Fourth DCA Mandate [ECF No. 19-1] at 602.

On July 27, 2017—while his appeal of the *second* Rule 3.850 Motion was pending—the Petitioner filed a motion to disqualify Judge Ilona Holmes, the state judge who had presided over his case, alleging that "there was a deal made between Judge Levenson and Judge Holmes to control the outcome of case [sic] in favor of the state." Motion to Disqualify [ECF No. 19-1] at 563. On September 4, 2017, the Petitioner filed a motion "for a new trial and reconsideration of all previous rulings entered by disqualified Judge Holmes," claiming (incorrectly) that his Motion to Disqualify "was automatically granted by the clerk of court on August 30, 2017[.]" Motion for Reconsideration [ECF No. 19-1] at 573. In this Motion for Reconsideration, the Petitioner alleged that Judge Holmes had violated his right to a fair trial and sought "a new trial and reconsideration of all previous rulings entered by disqualified Judge Holmes." *Id.* at 576. The record does not say whether either motion was ever ruled on.

On June 8, 2018—245 days after the Mandate issued in his *second* Rule 3.850 appeal—the Petitioner filed a "Verified Motion to Vacate Judgement and Sentence under Florida Rule 3.850," essentially his *third* Rule 3.850 Motion. *See* 2018 Rule 3.850 Motion ("*Third* Rule 3.850 Motion") [ECF No. 19-1] at 604–05. On June 12, 2018, the state court dismissed this *third* Rule 3.850 Motion as

---

F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

successive, summarily denied it on the merits, and dismissed it as time-barred (in part) because the

Petitioner conceded its untimeliness. *See* Order Dismissing *Third* Rule 3.850 Motion [ECF No. 19-1]

at 607–08 & n.1 ("Defendant concedes that his motion is time barred and successive, motion p.1.").

On September 20, 2018, the Petitioner—acting through counsel—filed a motion for reconsideration,

*see* Motion for Reconsideration on Denial of Third Post Conviction Motion [ECF No. 19-1] at 625,

which the state court denied, *see* Respondent's Exhibits in Support of Objections to Second Report

and Recommendations [ECF No. 44-1] at 12 ("Objection Exhibits to Second Report").

     In July of 2018, the Petitioner moved—again, through counsel—to reassign the case, claiming

(as before) that his 2017 Motion to Disqualify had been granted. *See* 2018 Motion for Clerks Office

for Order to Reassign Case ("Motion to Reassign") [ECF No. 19-1] at 628. The state court denied this

second Motion to Reassign on August 14, 2018. *See* Order Denying Motion to Reassign Case [ECF

No. 19-1] at 630. The Petitioner filed this action on October 8, 2018. *See* Petition.[5]

## STANDARD OF REVIEW

     When a magistrate judge's "disposition" has been properly objected to, district courts must

review that disposition *de novo*. FED. R. CIV. P. 72(b)(3). But, when no party has timely objected, "the

court need only satisfy itself that there is no clear error on the face of the record in order to accept

the recommendation." FED. R. CIV. P. 72 advisory committee's notes (citation omitted). Although

Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's

intent was to require *de novo* review only where objections have been properly filed—and not when

neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress

---

[5] The Petitioner submitted other filings during his years-long postconviction odyssey in state court.
We do not describe each of these here, though, because (1) we address some of them in the Analysis, *infra*, and (2) the rest were filed only after the federal statute of limitations expired. *See generally* Exhibits
[ECF No. 19-1] at 632–36, 638–67; *see also Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001) ("[A]
state court petition like Tinker's that is filed following the expiration of the federal limitations period
cannot toll that period because there is no period remaining to be tolled." (cleaned up)).

intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

"A party filing objections must specifically identify those findings objected to and the specific basis for such objections." *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 2005 WL 8155948, at *1 (S.D. Fla. Sept. 21, 2005). Therefore, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (citing *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. 1982)).

## THE LAW

"[A] person in custody pursuant to the judgment of a State court" has one year to file a § 2254 petition in federal court. 28 U.S.C. § 2244(d)(1). That one-year period "runs from the latest of" the following dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

§ 2244(d)(1)(A)–(D).

Of course, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" is not "counted toward any period of limitation under this subsection." § 2244(d)(2). In addition to this "statutory tolling," a petitioner may qualify for "equitable tolling" if he can show "'(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 549 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

## ANALYSIS

This case is complicated. The confusion stems, in no small part, from the Magistrate Judge's Report—which, though deeply flawed, somehow spit out the right answer. The Report's primary flaw is that it ignored the Petitioner's central timing contention: that either his Motion to Disqualify or his Motion for Reconsideration (or both) tolled his one-year statute of limitations under § 2244(d)(2)— what we call *statutory* tolling. *See* Pet. at 5; Report at 11. Instead, the Magistrate Judge determined that the Petitioner doesn't qualify for *equitable* tolling. *See* Report at 20 ("As a result of Petitioner's failure to properly and diligently pursue his rights, he has failed to demonstrate that he qualifies for the equitable tolling of the limitations period."). The Magistrate Judge was right on this one. In fact, in his Objections, the Petitioner wisely doesn't dispute the point. *See generally* Obj.[6] Instead, he hammers the Report for failing to address his position on *statutory* tolling. *See id.* at 1. Unfortunately for the Petitioner, while he's right to lambast the Report's failings, his Petition is still time-barred under § 2244(d)(2).

## I.    The Petition is Untimely

Here's why. In ordinary circumstances, the Petitioner would have had one year from May 18, 2016[7] to file this Petition. *See* 28 U.S.C. § 2244(d)(1)(A). On that day, though, the Petitioner's *first* Rule

---

[6] Having reviewed this determination for clear error, FED. R. CIV. P. 72—and having found none— the Court now **ADOPTS** this aspect of the Report.

[7]       This is the latest possible day on which the Petitioner's judgment could have become final. As we've explained, the Fourth DCA affirmed the Petitioner's conviction and sentence on February 18, 2016. *See Cuffy*, 186 So. 3d 1037. Under Florida law, a party seeking review of a DCA's decision has 30 days to appeal to the Florida Supreme Court. *See* FLA. R. APP. P. 9.120(b) ("The jurisdiction of the supreme court shall be invoked by filing a notice . . . within 30 days of rendition of the order to be reviewed."). But the Petitioner never appealed to the Florida Supreme Court. So, his conviction and

3.850 Motion—which he had filed on March 24, 2016, *see First* Rule 3.850 Motion [ECF No. 19-1] at 295—was still pending. A "properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency[.]" *Brown v. Sec'y, Fla. Dep't of Corr.*, 530 F.3d 1335, 1338 (11th Cir. 2008)); *see also Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000) ("We conclude, therefore, that the district court erred in failing to find that Nyland's motions were pending until the mandates issued and, presuming Nyland's second motion for state post-conviction relief was properly filed, his instant § 2254 petition was timely filed."). So, even though the one-year period started on May 18, 2016, zero statute-of-limitations days elapsed between that day and May 12, 2017, when the Fourth DCA issued its mandate denying the Petitioner's *first* Rule 3.850 Motion. *See* 2017 Mandate [ECF No. 19-1] at 510. Note that we don't add 30 days (for Florida Supreme Court review) from that 2017 Mandate because, "[i]n Florida, a state court of appeals' order denying a rehearing on its affirmance of the state trial court's denial of a motion for post-conviction relief is

---

sentence became final on March 19, 2016 (N.B. since 2016 was a leap year, February had 29 days)—when his 30 days to seek discretionary reviewed expired.

    And, because the Petitioner did not seek discretionary review from the Florida Supreme Court, he was not eligible to pursue a writ of certiorari from the U.S. Supreme Court. *See* Sᴜᴘ. Cᴛ. R. 13.1 ("Unless otherwise provided by law, a petition for a writ of certiorari to review a judgment in any case, civil or criminal, entered by a *state court of last resort . . .* is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment." (emphasis added)). The Report, though, "assuming without deciding that Petitioner were entitled to appeal to the Supreme Court of the United States," Report at 5, gifted the Petitioner 90 extra days from the date of the DCA's order (not mandate). This—as we've just explained—was doubly wrong. It was wrong, first, because the Petitioner—who never appealed to the Florida Supreme Court—wasn't entitled to 90 additional days for U.S. Supreme Court review. *See* Sᴜᴘ. Cᴛ. R. 13.1*; see also Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("We now hold, as we said in *Bond,* that the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review[.]"). The Magistrate Judge then made a second mistake. Adding 90 days to the date of the 4th DCA's order, she somehow arrived at a finality date of May 8, 2016. But 90 days from February 18, 2016 is May 18, 2016.

    The upshot, then, is that the Report gifted the Petitioner five extra days of tolled time (from March 19, 2016, when his direct appeal became final, until March 24, 2016, when he filed his *first* Rule 3.850 Motion). As we explain below, however, even with this gift, the Petition remains untimely.

pending until *the mandate issues*." *Nyland*, 216 F.3d at 1267 (citing *Hodges v. State*, 709 So. 2d 620, 621 (Fla. 1st DCA 1998) (emphasis added)).[8]

The one-year period then ran for 25 days—from May 12, 2017 to June 6, 2017, when the clock stopped because the Petitioner filed his *second* Rule 3.850 Motion. *See Roper v. Sec'y, Fla. Dep't of Corr.*, 434 F. App'x 786, 789 (11th Cir. 2011) ("Ordinarily, a properly filed Rule 3.850 motion like Roper's statutorily tolls AEDPA's limitations period."). The clock resumed on October 6, 2017, when the Fourth DCA issued its mandate denying the Petitioner's *second* Rule 3.850 Motion. *See* Second 2017 Mandate [ECF No. 19-1] at 602. And it continued running for 245 more days—until June 8, 2018— when the Petitioner filed his *third* Rule 3.850 Motion. *See Third* Rule 3.850 Motion [ECF No. 19-1] at 604.

This *third* Rule 3.850 Motion, however, did *not* stop the clock because it was not timely filed. Only motions that are "properly filed" toll the one-year limitations period. *Sweet v. Sec'y, Fla. Dep't of Corr.*, 467 F.3d 1311, 1315 (11th Cir. 2006) ("This much is clear: an application for state post-conviction or other collateral review tolls the federal period of limitation only if it was 'properly filed.'" (quoting § 2244(d)(2))). And, "[q]uite simply, the Supreme Court said that '[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2),'"

---

[8] Note the (very annoying) difference in the date of finality between direct and collateral appeals. *Compare Chavers,* 468 F.3d at 1275 ("We now hold, as we said in *Bond*, that the entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review[.]"); FLA. R. APP. P. 9.120(b) ("The jurisdiction of the supreme court shall be invoked by filing a notice . . . within 30 days of rendition of the order to be reviewed.") *with Carter v. Dep't of Corr.*, 2019 WL 6688695, at *1 (11th Cir. Sept. 29, 2019) ("In Florida, a state post-conviction appeal remains pending until the state appellate court's mandate issues."). In other words, assuming a litigant doesn't appeal either to the Florida Supreme Court or to the U.S. Supreme Court, a *direct* appeal becomes final when the time to appeal expires—which is either 30 (Florida Supreme Court) or 90 (U.S. Supreme Court) days after the DCA enters its order. A *post-conviction* motion, by contrast, becomes final as soon as *the mandate* issues.

because "time limits, *no matter their form,* are 'filing' conditions." *Id.* at 1316 (quoting *Pace,* 544 U.S. at 414, 417).

In *Carey v. Saffold*, the Supreme Court was presented with a one-sentence opinion from the California Supreme Court denying relief "on the merits and for lack of diligence." 536 U.S. 214, 217–18 (2002). Ultimately, "[t]he Court held that when a state court determines that a motion is untimely, that is the end of the matter, regardless of whether it also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." *Sweet,* 467 F.3d at 1317–18 (citing *Saffold,* 536 U.S. at 226 (cleaned up)). So, if "a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed[.]'" *Id.* at 1318.

The Report determined that Judge Holmes "denied and dismissed the [*third* Rule 3.850] motion as successive, on the merits, and noticed that [the] Petitioner conceded the motion was time-barred and successive." Report at 9. And Judge Holmes' order strongly supports this finding. *See* Order Dismissing *Third* Rule 3.850 Motion [ECF No. 19-1] at 607–08 & n.1. Judge Holmes, for instance, began her order by noting: "Defendant concedes that his motion is time barred and successive." *Id.* She then delved into an analysis of Florida's newly discovered evidence rule, *see id.* at 607 (citing FLA. R. CRIM. P. 3.850(b)(1))—Florida's statutory exception for untimely Rule 3.850 motions. After concluding that the "information" the Petitioner adduced "is not newly discovered," Judge Holmes "DISMISSED and DENIED" the motion. *See id.* at 607–08.

For five reasons, this Court has no trouble concluding that Judge Holmes ruled on the untimeliness of the Petitioner's motion. *First,* the motion *was* untimely. Florida law affords a habeas petitioner two years from "when a judgment and sentence become final" to file a motion under Rule 3.850. FLA. R. CRIM. P. 3.850(b). In the Petitioner's case, that two-year period began (at the latest) on

March 19, 2016, when his window to appeal to the Florida Supreme Court closed.[9] But the Petitioner didn't file his *third* Rule 3.850 Motion until June 8, 2018, *see Third* Rule 3.850 Motion [ECF No. 19-1] at 604—almost three months too late. *Second*, in dismissing the *third* Rule 3.850 Motion, Judge Holmes started her order by noting that the Petitioner had conceded its untimeliness—something she wouldn't have had to do if she were denying the motion on some other ground. *See* Order Dismissing *Third* Rule 3.850 Motion [ECF No. 19-1] at 607–08 & n.1. *Third*, Judge Holmes considered and rejected the Petitioner's "newly discovered evidence" contention—an argument that, again, would be relevant only in the context of an *untimely* motion. *Id.* at 607. *Fourth*, Judge Holmes both *dismissed* the motion *and denied* it on the merits—state-court speak for procedural bars, like untimeliness. *See Thomas v. State*, 949 So. 2d 319, 319 (3d DCA 2007) ("The instant habeas petition is yet another such attack. It is successive, time-barred, and meritless. For these reasons, the trial court should have dismissed the habeas corpus petition instead of denying it on the merits."). And, as we've said, if a state court rejects a collateral petition as untimely, the federal habeas court must accept that finding *even if* the state court separately reached the merits. *See Sweet*, 467 F.3d at 1318 (holding that, if "a state court determines that a petition is untimely, and also rejects the substantive claim on the merits, the timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed"). *Fifth*, when the Petitioner filed a motion to reconsider this denial of his *third* Rule 3.850 Motion, a different state judge (State Circuit Court Judge Barbara McCarthy) declined to reconsider Judge Holmes' ruling because, in her view, the *third* Rule 3.850 Motion was "untimely." Order Denying Motion for Reconsideration of *Third* Rule 3.850 Motion [ECF No. 44-1] at 12.[10] Because the *third* Rule 3.850 Motion wasn't timely,

---

[9] N.B. This two-year period wasn't tolled by the Petitioner's *first* and *second* Rule 3.850 Motions. *See Joseph v. State*, 835 So. 2d 1221, 1221 n.3 (Fla. 5th DCA 2003) ("The two-year limitation is not tolled by other collateral proceedings filed in the trial court, even if a corrected sentence is entered.").

[10]     The Petitioner objects to this conclusion. As he sees it, had the Fourth DCA believed that Judge Holmes dismissed his *third* Rule 3.850 Motion as untimely, it would have said so. *See* Obj. at 3 (asserting that the Fourth DCA "would [have lacked] jurisdiction to entertain the merits of [his] appeal

it didn't toll the one-year limitations period. *See Sweet*, 467 F.3d at 1317–18 ("Sweet's *Ring* petition was not timely filed in state court and, therefore, under § 2244(d), it was not 'properly filed' and could not toll the time for filing his federal habeas petition.").

From June 8, 2018, in other words, our one-year clock ran uninterrupted for 122 additional days—until October 8, 2018, when the Petitioner filed this Petition. *See* Pet. at 29. The Petitioner's clock thus ran—not counting valid breaks—for 392 days (25 plus 245 plus 122). Since § 2244(d)(1) gave him only 365 days, his Petition is untimely unless he qualifies for statutory tolling under § 2244(d)(1)(A).

## II.     The Effects of the Motions to Disqualify and for Reconsideration

In his Objections, the Petitioner insists that, under § 2244(d)(2), his Motions to Disqualify and for Reconsideration tolled the one-year period. *See* Obj. at 1. To qualify for tolling under § 2244(d)(2),

---

[on the denial of his third postconviction motion] if the second motion for reconsideration [on that underlying motion] was [in fact] untimely."). But that isn't the law. "[F]ederal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Sweet*, 467 F.3d at 1317 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991))).

The Fourth DCA affirmed, without explanation, Judge Holmes' denial of the Petitioner's *third* Rule 3.850 Motion. *See Cuffy v. State*, 299 So. 3d 1059 (Fla. 4th DCA 2020). And Judge Holmes, as noted, "dismissed" that motion as untimely. *See* Order Dismissing *Third* Rule 3.850 Motion [ECF No. 19-1] at 607–08. This Court must therefore presume that the Fourth DCA agreed with Judge Holmes *unless* the Petitioner can show "strong evidence" to the contrary. *Sweet*, 467 F.3d at 1317 ("[The trial court] denied the claim because it was untimely, and, in the alternative, also failed on the merits. In the absence of strong evidence to rebut the normal presumption that silence implies consent, we presume the Supreme Court of Florida's ruling to have rested on the same grounds." (cleaned up)).

In support of his view that the Fourth DCA disagreed with Judge Holmes, the Petitioner cites only the Fourth DCA's request that the *third* Rule 3.850 Motion be added to the record. *See* Obj. at 3. But this proves nothing. The Fourth DCA wouldn't have denied the motion without first reviewing it (no court would)—especially where, as in this case, it had to review Judge Holmes' finding that the Petitioner had adduced no "newly discovered evidence." Without appending the motion, in other words, the appellate court couldn't have passed on Judge Holmes' characterization of that evidence. Because, in short, the Petitioner has produced *no* evidence—let alone "strong evidence"—to rebut "the normal presumption that silence implies consent, we presume the [Fourth DCA's] ruling to have rested on the same grounds" as Judge Holmes'. *Sweet*, 467 F.3d at 1317.

a motion must be two things: *first*, it must be "properly filed"; *second*, it must "attack collaterally the relevant conviction or sentence." *Cantu v. Sec'y, Fla. Dep't of Corr.*, 778 F. App'x 760, 762 (11th Cir. 2019); *see also* 28 U.S.C. § 2244(d)(2) (only "properly filed application[s] for State post-conviction or other collateral review with respect to the pertinent judgment or claim" have any tolling effect); *Baker v. McNeil*, 439 F. App'x 786, 787 (11th Cir. 2011) ("[T]he phase 'collateral review' in § 2244(d)(2) means judicial review of a judgment in a proceeding that is not part of direct review."). And neither the Motion to Disqualify nor the Motion for Reconsideration meets *both* requirements.

The Motion to Disqualify is easy. That motion did nothing more than ask for Judge Holmes to be removed from, and for a new judge to be appointed to, the Petitioner's case. *See* Motion to Disqualify at 563. Since it didn't challenge the Petitioner's underlying conviction or sentence at all, it doesn't qualify as a "collateral motion." *Cantu*, 778 F. App'x at 762 ("[A] tolling motion must attack collaterally the relevant conviction or sentence."); *see also, e.g.*, *Brown*, 530 F.3d at 1337–38 (finding that "a Rule 3.853 proceeding," a post-conviction procedure for obtaining DNA, does not qualify as a "collateral motion" because it "involves an application for discovery only, pursuant to which the court lacks authority to order relief from the movant's sentence or conviction based on the DNA test results").

The Motion for Reconsideration is a bit trickier. If that motion is read as asking for a new trial, then it plainly attacked the conviction or sentence. This, in fact, is the cleanest reading of the motion. *See* Motion for Reconsideration at 576 (asking for a "new trial and reconsideration of all previous rulings entered by disqualified Judge Holmes"). Read this way, though, the motion couldn't have tolled the limitations period because it wasn't "properly filed." Under Florida law, a motion for a new trial must be filed within 10 days of the verdict. *See Showers v. State*, 778 So. 2d 424, 424 (Fla. 5th DCA 2001) ("A claim for new trial based on Florida Rule of Criminal Procedure 3.600 must be filed within

ten days after rendition of the verdict."). The Motion for Reconsideration—filed *five years after the verdict*—was thus (very) untimely.

But let's give the Petitioner the benefit of the doubt and assume that, in asking for "reconsideration of all previous rulings entered by disqualified Judge Holmes," he was challenging Judge Holmes' denial of his *first* and *second* Rule 3.850 Motions.[11] Motion for Reconsideration at 576 (seeking a "new trial *and reconsideration* of all previous rulings entered by disqualified Judge Holmes" (emphasis added)). And, since those first two Rule 3.850 Motions likewise addressed the Petitioner's underlying conviction and sentence, *see First* Rule 3.850 Motion [ECF No. 19-1] at 295; *Second* Rule 3.850 Motion [ECF No. 19-1] at 535, the Motion for Reconsideration—by challenging the denial of two motions that, in turn, challenged his conviction and sentence—should be construed as likewise attacking the judgment.

Even viewed in this way, though, the Motion for Reconsideration wasn't "properly filed." The Petitioner, remember, filed his Motion for Reconsideration because he believed that his Motion to Disqualify had been granted, that his case had been assigned to a new judge, and that he therefore could ask the new judge to reconsider all of Judge Holmes' prior rulings. *See* Motion for Reconsideration at 573 ("The [Motion to Disqualify] was automatically granted by the clerk of court on August 30, 2017[.] [T]he instant motion has been filed within the 20 days as required by the rule to be considered for reconsideration on the merits by the trial court."). In this, the Petitioner wasn't

---

[11] This is admittedly a bit of a stretch. The Motion for Reconsideration, after all, references only Judge Holmes' decisions at trial—such as her orders on continuances, jury instructions, and juror strikes—and never mentions either his *first* or his *second* Rule 3.850 Motion. But the Petitioner's *pro se* Motion for Reconsideration is no model of clarity. It doesn't, for instance, cite to Rule 3.800 (Correction, Reduction, and Modification of Sentences), or Rule 3.820 (Habeas Corpus), or Rule 3.850 (Motion to Vacate, Set Aside, or Correct Sentence). And the Supreme Court has admonished district courts to hold *pro se* filings to "less stringent standards than those drafted by an attorney." *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). Given this relaxed standard, this Court should (at least) address the possibility that, in filing his Motion for Reconsideration, the Petitioner was attacking the denial of his first two Rule 3.850 Motions.

completely off the mark. Florida law, it's true, provides that a motion to disqualify a judge is automatically granted after it's been pending for 30 days. *See* FLA. R. JUD. ADMIN. 2.330(j) ("[A] judge shall rule on a motion to disqualify immediately, but no later than 30 days after the service of the motion as set forth in subdivision (c). If not ruled on within 30 days of service, the motion shall be deemed granted and the moving party may seek an order from the court directing the clerk to reassign the case."). Because the Petitioner filed his Motion to Disqualify on July 27, 2017, *see* Motion to Disqualify at 563—and since no one ever denied it—the Petitioner believed that the Motion to Disqualify had been automatically granted on August 30, 2017. *See* Motion for Reconsideration at 573 ("The [Motion to Disqualify] was automatically granted by the clerk of court on August 30, 2017[.]").[12] He filed his Motion for Reconsideration only a few days later, on September 4, 2017. *See id.* Under Florida law, "[p]rior factual or legal rulings by a disqualified judge may be reconsidered and vacated or amended by a successor judge based upon a motion for reconsideration which must be filed within 20 days of the order of disqualification[.]" FLA. R. JUD. ADMIN. 2.330(h). And so, if his Motion to Disqualify had been (as he supposed) automatically granted, his Motion for Reconsideration would have been timely.

What the Petitioner forgets, however, is that, when he filed his Motion to Disqualify (July 27, 2017), his *second* Rule 3.850 Motion was on appeal. *See* Notice of Appeal for *Second* Rule 3.850 Motion [ECF No. 19-1] at 561 (appeal filed on June 26, 2017); Second 2017 Fourth DCA Mandate [ECF No. 19-1] at 602 (showing that the mandate issued on October 6, 2017).[13] And Florida law is clear that a

---

[12] The Petitioner somehow landed on August 30, 2017 when he counted 30 days from July 27, 2017. Although this computation is incorrect—30 days actually brings us to August 26, 2017—the error is immaterial because September 4, 2017 (the day he filed his Motion for Reconsideration) is still within 20 days of either date.

[13] In what looks like a typo, the Report suggested that the Petitioner filed the Motion to Disqualify while his "third post-conviction motion" was on appeal. *See* Report at 15. As we've seen, however, the Petitioner filed the Motion to Disqualify on July 27, 2017, *see* Motion to Disqualify at 563— approximately one month after Judge Holmes denied his *second* Rule 3.850 Motion, *see* Order Denying

trial court loses jurisdiction to rule on a motion for disqualification while an appeal is pending. *See Kluck v. Cloninger*, 39 So. 3d 1277, 1277 (Fla. 5th DCA 2010) ("The trial court lost jurisdiction when the notice of appeal was filed, and the order of disqualification entered during the pendency of the appeal was a nullity."); *see also Nilio v State*, 143 So. 3d 424, 426 (Fla. 1st DCA 2014) (holding that a "motion to disqualify" filed "at a time when the trial court's jurisdiction had not been invoked for any other purpose" was "void *ab initio*."); *State v. Powell*, 460 So. 2d 421, 422 (Fla. 5th DCA 1984) ("The judge who ruled on the motion to vacate was in error because he had no jurisdiction to grant a new trial—neither did the trial judge. That jurisdiction was lost after the appeal was taken and never regained."); *Shepard v. State*, 912 So. 2d 1250, 1252 (Fla. 2d DCA 2005) ("Once a notice of appeal is filed, the trial court is divested of jurisdiction to amend the sentence[.]").[14]

The Petitioner's reliance on *Rucks v. State*, 692 So. 2d 976 (Fla. 2d DCA 1997), for the contrary view is misplaced. *See* Obj. at 5. *Rucks*, after all, had nothing to do with the question presented here: whether a petitioner's decision to appeal the trial court's ruling strips the trial court of jurisdiction to consider the petitioner's subsequent motion to disqualify the trial judge. The petitioner in *Rucks* filed her motion to disqualify after the trial judge revoked her probation and ordered her to serve the rest of her sentence in jail. *See Rucks*, 692 So. 2d at 976. The trial court denied the motion to disqualify,

---

*Second* Rule 3.850 Motion [ECF No. 19-1] at 546–57, and some 31 days after he appealed that denial, *see* Notice of Appeal of *Second* Rule 3.850 Motion [ECF No. 19-1] at 561. Since the Petitioner didn't file his *third* Rule 3.850 Motion until June 8, 2018, *see Third* Rule 3.850 Motion [ECF No. 19-1] at 604–05, his Motion to Disqualify (obviously) couldn't have been filed during the pendency of that *third* appeal.

[14] For similar reasons, the Motion for Reconsideration cannot toll the limitations period by itself. That is to say, the Petitioner's whole argument relies on the proposition—now discredited—that the Motion for Reconsideration tolled the limitations period *because* the Motion to Disqualify had been automatically granted. If the Petitioner were correct, as we've said, his case would have been transferred to a new judge, and his Motion for Reconsideration may well have been timely. The point here, though, is that, without the Motion to Disqualify, the Motion for Reconsideration is nothing more than a very late motion in a long-since closed case. In short, the Motion for Reconsideration can be timely only if it succeeded Judge Holmes' disqualification.

and the petitioner appealed. *Id.* at 977. On appeal, the State argued that "the absence of any pending action in this criminal case render[ed] [the petitioner's] petition moot." *Id.* In response, the petitioner represented that "she had already filed a motion to mitigate her sentence." *Id.* In the State's view, however, the petitioner—who had already been convicted and sentenced—had no active case from which the trial judge could be disqualified. The Second DCA concluded that "[t]his factual disagreement is irrelevant to our resolution of this matter. The absence of any pending action in a case before the challenged judge may play a role in determining which writ is utilized to seek redress, but will not foreclose the provision of relief." *Id.*

*Rucks* thus stands for the sensible and straightforward proposition that a motion to disqualify *may* be filed in a closed case. *Id.* But it did not answer the separate question at issue here: whether the filing of a notice of appeal strips the trial judge of jurisdiction to consider a subsequently-filed motion to disqualify. *Kluck*, by contrast, squarely addressed this question and concluded, as mentioned, that the notice of appeal *does* divest the trial court of jurisdiction to adjudicate such a motion. *See Kluck*, 30 So. 3d at 1277. And *Nilio*, for its part, concluded that, where a court lacks jurisdiction, any filed motion is "void *ab initio*." *Nilio*, 143 So. 3d at 426. To summarize, then, as soon as the Petitioner filed his notice of appeal, he stripped the trial court of jurisdiction to adjudicate any later motions—including, as relevant here, his Motion to Disqualify.

Nor, for three reasons, could the Petitioner argue that his Motion to Disqualify was held in abeyance—and thus was never denied—until the trial court regained jurisdiction, at which point (after the expiration of 30 days), it was automatically granted. *First*, and most obviously, the Petitioner never advanced this argument—and so, he's waived the point. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). *Second*, *Nilio* squarely rejected the notion that a motion filed in a court that lacks jurisdiction—a motion that, in *Nilio*'s words, is "void *ab initio*"—can survive in a kind

of coma-like stasis until the court's jurisdiction is restored. *See Nilio*, 143 So. 3d at 426 ("We find no authority dictating that a motion to disqualify filed when the trial court's jurisdiction has not otherwise been invoked is held in abeyance until the court possesses jurisdiction over some other substantive matter."); *see also id.* ("[S]uch a pronouncement would [not] be reasonable given the strict and unforgiving nature of the 30-day requirement set forth in rule 2.330(j), and the burden such a procedure would place on trial judges in that circumstance. We could conclude that Mr. Nilio's motion for disqualification, having been filed at a time when the trial court's jurisdiction had not been invoked for any other purpose, was void *ab initio* and therefore did not implicate the provision of rule 2.330(j) upon which Mr. Nilio relies.").[15] *Third*, the argument assumes that the trial court's jurisdiction was (at some point) restored. But, in fact, once the Fourth DCA affirmed Judge Holmes' decision on the *second* Rule 3.850 Motion, the case ended—and, unlike a phoenix, who's reborn from the embers of his previous self, the case was never resuscitated (not before Judge Holmes nor elsewhere). *See Cuffy v. State*, 231 So. 3d 446 (Fla. 4th DCA 2017) (affirming Judge Holmes without explanation).

The Florida state courts appear to agree with this result. In July of 2018, the Petitioner moved to reassign his case, claiming (as he does here) that his 2017 Motion to Disqualify had been granted. *See* Motion to Reassign at 628. But the state court denied this Motion to Reassign on August 14, 2018. *See* Order Denying Motion to Reassign at 630. Not content with this result, the Petitioner then filed (in the Fourth DCA) a petition for a writ of prohibition, *see* December 2018 Petition for Writ of Prohibition [ECF No. 33-1]—a mechanism under Florida law by which a habeas petitioner can ask the DCA to disqualify a trial judge, *see Haas v. Davis*, 37 So. 3d 983, 983 (Fla. 3d DCA 2010). In that filing, the Petitioner—as here—asked the Fourth DCA to remove Judge Holmes because (he said) his Motion to Disqualify "was deemed granted." December 2018 Petition for Writ of Prohibition at 8. As

---

[15] And the Court has found no authority for the contrary proposition.

it does here, the State argued that the Petitioner's Motion to Disqualify was void *ab initio* because the Petitioner had filed it while the case was on appeal. *See* Response to Order to Show Cause [ECF No. 33-1] at 33–34 (citing *Kluck* and *Nilio*). The Fourth DCA agreed and summarily denied the Petition for Writ of Prohibition. *See* May 2019 Denial of Writ [ECF No. 44-1] at 14. The Fourth DCA, in short, appears to agree that the Petitioner's Motion to Disqualify was never granted.[16]

---

[16]     This conclusion moots two of the Petitioner's other contentions. *First*, it moots the Petitioner's claim that, once Judge Holmes was disqualified from his case, she was precluded from ruling on his *third* Rule 3.850 Motion. *See* Obj. at 2 ("On June 12, 2018, Judge Holmes (Disqualified Judge) entered an order denying Petitioner's Third Post Conviction Motion. Petitioner attempted to enforce the disqualification, filed a motion to re-assign the case."). And (the argument goes), since her order denying his *third* Rule 3.850 Motion was void—which, presumably, would mean that the Petitioner is, even today, benefitting from statutory tolling. *Id.* As we've seen, however, it was the Petitioner's Motion to Disqualify Judge Holmes that was void *ab initio*. As a result, Judge Holmes was never disqualified, and her order denying his *third* Rule 3.850 Motion took effect the moment she entered it.

     *Second*, it moots his challenge to the Report's admittedly questionable foray into timeliness analysis. The Report correctly noted that, under Florida law, a party may file a motion for disqualification within "a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion[.]" FLA. R. JUD. ADMIN. 2.330(e). "[T]he judge shall rule on a motion to disqualify immediately . . . . [I]f not ruled on within 30 days of service the motion shall be deemed granted and the moving party may seek an order from the court directing the clerk to reassign the case." FLA. R. JUD. ADMIN. 2.330(h). The Report added that "Florida courts have deemed a motion for recusal to be untimely if the moving party waits to file the motion until after it has suffered an adverse ruling, unless the party can show good cause for the delay," suggesting that "[i]t is clear Petitioner sought Judge Holmes' recusal only after her adverse ruling on this second post-conviction motion," and—tying these thoughts together—concluding that the Petitioner's Motion to Disqualify "could not have been deemed as granted after thirty days." Report at 18–19 (quoting *Ferguson v. Sec'y, Fla. Dep't of Corr.*, 580 F.3d 1183, 1219 (11th Cir. 2009) (cleaned up)).

     The Petitioner is right to criticize this aspect of the Report, *see* Obj. at 4–5—even if his objections are ultimately immaterial. The Petitioner says that he filed his Motion to Disqualify only two days after he received "information [of misconduct] . . . from an attorney that currently appears before . . . Judge Holmes," Motion to Disqualify at 563–68—hardly an unreasonable delay and, in any case, well within the 10-day window set out in FLA. R. JUD. ADMIN. 2.330(e). The Petitioner, it's true, filed his Motion to Disqualify only a few days after an adverse ruling (Judge Holmes' denial of his *second* Rule.3850 Motion). But he acted promptly after learning of the (alleged) misconduct. The Motion to Disqualify was thus filed "within a reasonable time." Nevertheless, as we've explained, the Motion to Disqualify failed to toll the limitations period—not because it was late—but because it (1) didn't challenge the Petitioner's conviction and sentence and (2) was void *ab initio*.

18

Since the Motion to Disqualify was a nullity under Florida law *when it was filed*, it couldn't have been granted—automatically or otherwise—at the expiration of 30 days. That, of course, means that the Petitioner's Motion to Disqualify was *never* granted, that his case was *never* reassigned to a new judge, and that he presented his Motion for Reconsideration—which he had hoped to file before someone else—to Judge Holmes. Why does this matter? Because, under Florida law, a party has 15 days to challenge a final order with a motion for rehearing.[17] *See* FLA. R. CRIM P. 3850(j) ("Any party may file a motion for rehearing of any order addressing a motion under this rule within 15 days of the date of service of the order."). As we've said, the Motion for Reconsideration could only be considered a "collateral motion"—and, thus, could only toll the one-year period under § 2244(d)(2)—if it challenged Judge Holmes' denial of one or both of his Rule 3.850 Motions.

Judge Holmes denied the *first* Rule 3.850 Motion on December 15, 2016. *See* Order Denying *First* Rule 3.850 Motion at 477. Under Florida law, then, the Petitioner had 15 days—or until December 30, 2016—to move for reconsideration of this denial. *See* FLA. R. CRIM. P. 3.850(j). Judge Holmes denied the Petitioner's *second* Rule 3.850 Motion on June 16, 2017. *See* Order Denying *Second* Rule 3.850 Motion at 552. The Petitioner likewise had 15 days—or until July 1, 2017—to move for reconsideration of this denial. FLA. R. CRIM. P. 3.850(j). But the Petitioner didn't file his Motion for Reconsideration until September 4, 2017. *See* Motion for Reconsideration at 573. It was thus 20 months too late with respect to the *first* denial and three months too late as to the *second*. Since the Motion for Reconsideration wasn't timely, it wasn't properly filed within the meaning of § 2244(d)(2). *See Sweet*, 467 F.3d at 1316 ("When a postconviction petition is untimely under state law, that is the

---

[17] The Petitioner's Motion for Reconsideration is actually a "motion for rehearing" under Florida law because it challenged a final order. *See Seigler v. Bell*, 148 So. 3d 473, 479 (Fla. 5th DCA 2014) ("Nomenclature does not control, and motions for either 'rehearing' or 'reconsideration' aimed at final judgments shall be treated as rule 1.530 motions for rehearing, while motions aimed at nonfinal orders shall be treated as motions for reconsideration.").

end of the matter for purposes of § 2244(d)(2), because, time limits, *no matter their form,* are filing

conditions." (cleaned up)).[18]

Trying to parry this result, the Petitioner blames the Report for failing to consider two motions

for reconsideration he filed in state court—in which he sought reconsideration of the denial of his

*third* Rule 3.850 Motion. *See* Obj. at 1–2 ("After discovering the case had been re-assigned to Judge

McCarthy, Petitioner filed a <u>second</u> motion for reconsideration [so that the successor judge could]

reconsider the order denying Petitioner's Third Post Conviction Motion[.]"). To hear the Petitioner

tell it, a successor judge (presumably Judge McCarthy) granted one of these two motions, revisited the

*third* Rule 3.850 Motion, and then (months later) entered a new order re-denying the *third* Rule 3.850

Motion. *See id.* at 2–3. If this were true, the Petitioner might[19] get the benefit of those additional

months between his filing of the motions for reconsideration and the ultimate re-denial of the *third*

Rule 3.850 Motion.

Unfortunately for the Petitioner, none of this ever happened.[20] As we've explained, Judge

Holmes dismissed the *third* Rule 3.850 Motion as untimely on June 12, 2018. *See* Order Dismissing

---

[18] This conclusion moots the Petitioner's final objection, in which he chastises the Report for failing to toll the time between his "Motion for Reconsideration of New Trial" (September 4, 2017) "up until the time Petitioner filed his habeas petition on October 2018." Obj. at 6–8. Since the Motion for Reconsideration was filed while the case was on appeal, it was void *ab initio.* And, to the extent it could be seen as a standalone request that Judge Holmes reexamine all her prior rulings—including her denials of his first two Rule 3.850 Motions—it was way too late.

[19] As we've seen, even if all this had occurred (which it didn't), the limitations period still wouldn't have been tolled because the *third* Rule 3.850 Motion was itself untimely when it was filed—and so, it was not "properly filed."

[20] In her Second Report, the Magistrate Judge did mysteriously suggest that the state court had "granted" one of the Petitioner's motions for reconsideration. *See* Second Report at 4 (citing Judicially Noticed Order Requiring Response ("State Court's Order for Response") [ECF No. 39-5]). The Court has since vacated this Second Report. Nevertheless, the Petitioner runs with it and argues—somewhat nonsensically—that "[t]he Successor Judge could ONLY granted [sic] the motion [for reconsideration if] pursuant to Fla. Jud. Admin. Rule 2.330(h) . . . it determined the motion for disqualification was deemed granted." Obj. at 2. But, as the title of the State Court's Order for Response implies—and as even a cursory glance at the order's text makes clear—that order never granted anything (let alone a motion for reconsideration). Instead, the order simply required the State to respond to the Petitioner's

*Third* Rule 3.850 Motion at 607–08. The Petitioner then filed a motion for reconsideration on September 20, 2018, *see* Motion for Reconsideration of Dismissal of *Third* Rule 3.850 Motion [ECF No. 19-1] at 625, which Judge McCarthy—to whom the case had been reassigned[21]—likewise denied, reasoning (as Judge Holmes had) that the *third* Rule 3.850 Motion was, in fact, untimely, *see* Order Denying Motion for Reconsideration of *Third* Rule 3.850 Motion at 12. And this motion to reconsider the denial of the *third* Rule 3.850 Motion cannot toll a limitations period that, because of the untimeliness of the underlying Rule 3.850 Motion, had already expired. *See Tinker*, 255 F.3d at 1333 ("[A] state court petition like Tinker's that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled." (internal quotations omitted)). In sum, since the *third* Rule 3.850 Motion wasn't timely, the motion to reconsider its denial could not have been "properly filed." *Sweet*, 467 F.3d at 1317–18 (concluding that a "timeliness decision standing alone compels a federal court to conclude that the state motion was not 'properly filed'").

\*\*\*

Because neither the Motion to Disqualify nor the Motion for Reconsideration tolled the applicable limitations period, the Petition is untimely and must be dismissed.

---

motion for reconsideration of the denial of his *third* Rule 3.850 Motion. *See* State Court's Order for Response at 1 ("The Court has reviewed the Motion and finds that a response by the State is necessary. Accordingly, it is hereby ORDERED AND ADJUDGED that the Office of the State Attorney shall have **60** business days in which to file a response to the Defendant's Motion, and to provide a courtesy copy of said response to this Court.").

[21] Judge Holmes retired at the end of 2018. *See Judge Ilona M. Homes: Excellence Personified,* WESTSIDE GAZETTE, Dec. 6, 2018, https://thewestsidegazette.com/judge-ilona-m-holmes-excellence-personified/ ("After nearly 24 years, Judge Ilona M. Holmes will be retiring from Broward's Circuit Court in January 2019.").

## EVIDENTIARY HEARING

The Petitioner fails to challenge the Report's conclusion that his Petition does not merit an evidentiary hearing. And, because none of his claims requires further factual development, the Report's determination is not clearly erroneous. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). Any request for an evidentiary hearing is therefore **DENIED**.

## CERTIFICATE OF APPEALABILITY

The Petitioner likewise does not object to the Report's suggestion that his request for a certificate of appealability should be denied. A certificate of appealability should issue only when the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). But, when (as here) a district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the Petition's untimeliness is not (in this Court's humble estimation) subject to reasonable debate, any request for a certificate of appealability is **DENIED**.

***

Having thoroughly reviewed the record and the governing law, the Court hereby **ORDERS AND ADJUDGES** that the Report is **ADOPTED IN PART**—and only as detailed in this Order.

The Petition is **DISMISSED as untimely**; any request for a certificate of appealability is **DENIED**; any demand for an evidentiary hearing is **DENIED**; all other pending motions are

**DENIED AS MOOT**; and all deadlines are **TERMINATED**. The Clerk of Court shall **CLOSE** this case.

      **DONE AND ORDERED** in Fort Lauderdale, Florida, this 25th day of January 2021.

 

 

                                          **ROY K. ALTMAN**
                                          **UNITED STATES DISTRICT JUDGE**

cc:     Johnson Cuffy
         L74637
         New River Correctional Institution
         Inmate Mail/Parcels
         PO Box 900
         Raiford, FL 32083
         PRO SE

         Paul Patti , III
         Office of the Attorney General
         1515 N. Flagler Drive
         Ste. 900
         West Palm Beach, FL 33401-3428
         (561) 837-5016
         Fax: (561) 837-5108
         Email: paul.patti@myfloridalegal.com

         Noticing 2254 SAG Broward and North
         Email: CrimAppWPB@MyFloridaLegal.com